## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IQRA AMEER**,

                Plaintiff,

                v.

**ANDREW SCHOFER**, *et al.*,

                Defendants.

Case No. 1:23-cv-03066 (TNM)

## MEMORANDUM OPINION

Iqra Ameer, a Pakistani citizen, applied for a non-immigrant visa to teach computer science at Pennsylvania State University. Although Ameer submitted a complete visa application and interviewed with a consular officer, she claims her application has languished in "administrative processing" for several months now. To nudge this process along, Ameer sued Deputy Chief of Mission Andrew Schofer and Secretary of State Antony Blinken (collectively, State). She contends that State has "unlawfully withheld or unreasonably delayed" a final determination on her visa application and seeks to compel State to process her visa within fifteen days or "as soon as reasonably possible." State moved to dismiss under Rules 12(b)(1) and 12(b)(6). That motion is ripe. And the Court will grant it because Ameer fails to state a claim under Rule 12(b)(6).

## I.

Plaintiff Iqra Ameer was hired by Penn State as an Assistant Professor of Computer Science. Pet. for Writ of Mandamus & Compl. (Compl.) ¶ 3, ECF No. 1. In May 2023, she filed a completed application for an H-1B nonimmigrant visa, which permits foreign nationals to work temporarily in certain specialty occupations. *See* 8 U.S.C. § 1101(a)(15)(H). That month, U.S.

Citizenship and Immigration Services approved the university's H-1B sponsorship petition. Compl. ¶ 12; *see* 8 C.F.R. § 214.2(h)(1) (describing employer petition requirement for H-1B visas).

In June 2023, Ameer was interviewed by a consular officer at the U.S. Embassy in Pakistan. Compl. ¶ 13. Following the interview, the consular officer refused Ameer's application, citing Section 221(g) of the Immigration and Nationality Act (INA). *See* Mot. to Dismiss (MTD) at 7, ECF No. 8; Opp'n to MTD (Opp'n) at 14–15, ECF No. 11. Section 221(g) provides that a consular officer must refuse to issue a visa if it appears "from statements in the application, or in the papers submitted therewith" that the alien is ineligible for a visa under any "provision of law" or if the "officer knows or has reason to believe that such alien is ineligible to receive a visa." 8 U.S.C. § 1201(g). Upon refusing her application, the consular officer informed Ameer that her application would be placed in "administrative processing." Compl. ¶ 14.

Ameer's application remains in "administrative processing" to this day. And despite making several inquiries with State as to the status of her application, she has received no meaningful responses. *Id*. ¶ 15. With no visa in hand, Ameer has been forced to teach her classes at Penn State "remotely." *Id*. ¶ 3. And if she does not obtain a visa soon, she fears that her position will be terminated. *Id*.

In October 2023, Ameer sued State, claiming that it has unreasonably delayed adjudicating her visa application in violation of 5 U.S.C. §§ 555(b) and 706(1). Compl. ¶¶ 12–32. She seeks injunctive relief compelling State to "process [her] visa application within fifteen (15) days . . . or as soon as reasonably possible." *Id*. ¶ 33. State now moves to dismiss the Complaint.

## II.

State argues that dismissal is proper under Rule 12(b)(1) and 12(b)(6).  So two standards apply.

To survive a Rule 12(b)(1) motion to dismiss, Ameer "bears the burden of establishing jurisdiction by a preponderance of the evidence."  *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91 (D.D.C. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  This includes "establishing the elements of standing."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  At this stage, the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

And to survive a motion to dismiss under Rule 12(b)(6), a complaint must plausibly "state a claim upon which relief can be granted."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007).  While "detailed factual allegations" are unnecessary, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  In short, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

## III.

State advances several grounds for dismissal.  It argues that Ameer lacks standing; that State has no duty to act on her visa application; that judicial review of visa adjudications is barred by consular nonreviewability; and that, in any case, Ameer's claims fail on the merits because a delay of twelve months is not unreasonable.  The Court addressed similar arguments at

length in a recent opinion.  *See Yaghoubnezhad, et al. v. Stufft, et al.*, 2024 WL 2077551 (D.D.C.

May 9, 2024).  And it finds no reason why this case should not be resolved on the same grounds.

**A.**

Consider first whether Ameer has standing.  To satisfy Article III's constitutional

standing requirements, she must show "(1) an 'injury in fact' that is 'concrete and particularized'

as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged

conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed

by a favorable decision.'"  *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014)

(quoting *Lujan*, 504 U.S. at 560–61).

**1.**

State argues that the procedural harm of delay and the ultimate harm of denied entry do

not support standing here.  Not so.

To satisfy Article III, a procedural harm "must be tethered to some concrete interest

adversely affected by the procedural deprivation."  *WildEarth Guardians v. Jewell*, 738 F.3d

298, 305 (D.C. Cir. 2013).  Ameer plausibly alleges that her procedural injury—delay in

processing her visa—has caused cognizable downstream harms.  *See Lujan*, 504 U.S. at 572.

Because of the delay, she has been forced to take "unpaid leave" and faces "termination if her

visa is not obtained soon."  Compl. ¶¶ 2–3.  As several cases from this district illustrate, these

injuries are concrete enough to constitute an injury-in-fact.  *See Khan v. Blome*, 2022 WL

17262219, at *3 (D.D.C. Nov. 29, 2022) (finding plaintiff had "concrete financial and other

interests in attending his residency program or pursuing other options"); *Rahman v. Blinken*,

2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023) (similar).

State glosses over these alleged concrete harms and instead insists that Ameer lacks standing because she has no legally protected interest in obtaining the requested visa. *See* MTD at 7–13; Reply to Opp'n (Reply) at 3, ECF No. 12. Citing a bevy of seemingly conclusive authorities, State asserts that Ameer's alleged substantive harm—her inability to obtain a visa for admission to the United States—is "not one recognized at common law, by statute, or in the Constitution." MTD at 7. In its view, this should dispense with Ameer's claim to injury-in-fact.

But State's "long line of cases" regarding a statutory or constitutional right to entry does not directly bear on Article III standing. *See, e.g.*, *Pourabdollah v. Blinken*, 2024 WL 474523, at *4 (D.D.C. Feb. 7, 2024); *Yaghoubnezhad*, 2024 WL 2077551, at *4. To be sure, the Supreme Court has held that "an unadmitted and nonresident alien[] ha[s] no constitutional right of entry." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972); *see also Trump v. Hawaii*, 585 U.S. 667, 670 (2018) (explaining that "[f]oreign nationals seeking admission have no constitutional right to entry"). Yet those cases addressed the merits of plaintiffs' *constitutional* claims—not whether plaintiffs had suffered legally cognizable injuries that satisfy Article III. *See Pourabdollah*, 2024 WL 474523, at *4.

Although aliens seeking visa adjudications can assert no constitutional injuries, "harms specified by the Constitution itself" are not the only means to establish Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Plaintiffs may also plead "traditional tangible harms, such as physical harms and monetary harms" or "[v]arious intangible harms . . . with a close relationship to harms traditionally recognized." *Id*. Since Ameer has pled that she

suffers from "job instability" and lost income because of the delay in processing, she satisfies the injury-in-fact requirement. *See* Compl. ¶ 3; Opp'n at 7.

State also points to courts' general practice of refusing to review consular visa determinations as proof of Ameer's lack of a legally cognizable injury. *See* MTD at 12. But just like the existence of a right of entry, State's consular nonreviewability arguments go to the merits and not to standing. *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021) (explaining that consular nonreviewability is "a merits disposition under Federal Rule of Civil Procedure 12(b)(6)"); *see also Matushkina v. Nielsen*, 877 F.3d 289, 294 n.2 (7th Cir. 2017) ("We treat the doctrine of consular nonreviewability as a matter of a case's merits rather than the federal courts' subject matter jurisdiction."); *Allen v. Milas*, 896 F.3d 1094, 1102 (9th Cir. 2018) (same). Though consular nonreviewability is an important issue here, its relevance is on the merits—which is where the Court will address it. *Accord Yaghoubnezhad*, 2024 WL 2077551, at *4.

## 2.

Next, State argues that any order compelling further adjudication of Ameer's visa will not redress her alleged injuries. MTD at 13. According to State, a consular officer has already "refused" Ameer's visa. *Id*. And though her application is now in "administrative processing," Ameer has not pled facts establishing that further adjudication would lead to any different result. *Id*. The Court is unpersuaded. It is no secret that refused applications placed in administrative processing are sometimes granted. *See Yaghoubnezhad*, 2024 WL 2077551, at *1 n.1. And at this early stage, the Court finds that an order requiring State to speed up this process would plausibly redress Ameer's injuries. *Khazaei v. Blinken*, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).

**3.**

Last, State contends that the Secretary cannot provide the relief requested and should be dismissed.  The Court agrees.  Under 8 U.S.C. § 1104(a), the Secretary is granted broad control over "the administration and the enforcement of . . . immigration and nationality laws."  But he is expressly precluded from "the administration and the enforcement of . . . those powers, duties, and functions conferred upon the consular officers *relating to the granting or refusal of visas*."  *Id*. (emphasis added).  In other words, the Secretary is precluded not only from "controlling [consular officers'] [visa] determinations," *Baan Rao*, 985 F.3d at 1024, but also from administering or enforcing duties that merely "relate[]" to those determinations, 8 U.S.C. § 1104(a).  This would include providing guidance for the completion of administrative processing.  *See Yaghoubnezhad*, 2024 WL 2077551, at *5.  So the Secretary is not a proper defendant.

The Deputy Chief of Mission presents a different question.  Nothing in § 1104(a) purports to limit the Deputy's authority in the administration and enforcement of "duties . . . relating to the granting or refusal of visas."  So at this initial stage, the Court concludes that an order directed to him might redress Ameer's injuries.  *Accord Logan v. Blinken*, 2022 WL 3715798, at *1 (D.D.C. Aug. 29, 2022) (dismissing DHS Secretary and USCIS Director but not Deputy Chief of Mission on standing grounds).  Ameer thus has standing to sue one of the named Defendants here.

**B.**

Now consider whether the Court can compel State to act on Ameer's visa application.  Under § 706(1) of the APA, a court may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).   This provision generally applies when an agency

fails to take an action required by law.  Yet courts' authority to compel action under § 706(1) is limited.  A § 706(1) claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004).  To merit relief, Ameer must show that State is subject to a "legal duty" that is "ministerial or nondiscretionary" and amounts to "a specific, unequivocal command." *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) (cleaned up).  The standards for granting mandamus relief "are essentially the same." *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010).

Ameer seeks § 706(1) and mandamus relief on the grounds that State has a discrete and nondiscretionary duty to adjudicate her visa application within a reasonable time.  *See* Compl. ¶¶ 12–32.  This duty arises from the INA and its implementing regulations.  The INA requires that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(d).  And the INA's implementing regulations dictate that once "a visa application has been properly completed and executed . . . the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa."  22 C.F.R. § 41.121(a).

As this Court and others have concluded, these provisions establish a discrete duty for State to adjudicate visa applications.  *See Yaghoubnezhad*, 2024 WL 2077551, at *7; *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020); *Khazaei*, 2023 WL 6065095, at *6 (same).  Judicial review under § 706(1) or mandamus relief is therefore appropriate if a consular officer has indefinitely delayed "issu[ing] or refus[ing] [a] visa."  22 C.F.R. § 41.121(a).

Ameer claims that State has shirked its duty to either "issue" or "refuse" her visa application by casting it into a purgatory of "administrative processing."  But, as with most cases of this type, this is not the full story.  In its Motion to Dismiss, State contends that a consular

officer has, in fact, "refused" Ameer's application under INA § 221(g), thereby discharging its duty to adjudicate Ameer's applications. *See* MTD at 23. Ameer's Complaint does not indicate that her application was first refused under § 221(g). But she concedes so much in her Opposition. *See* Opp'n at 15.

Still, the parties disagree about the legal significance of the § 221(g) refusal. Because her application remains in "administrative processing," Ameer contends that her § 221(g) refusal was not "final." *See* Opp'n at 17–19. And, according to Ameer, State discharges its duty only when it either issues a "final" refusal or grants the visa. Meanwhile, State argues that once it has issued a § 221(g) refusal it has no statutory or regulatory obligation to take any further action. Opp'n at 23.

The Court addressed this issue at length in *Yaghoubnezhad*. 2024 WL 2077551, at *8–9. And it concluded that neither the INA nor its implementing regulations impose a duty on State to complete "administrative processing" once it has already refused a visa under § 221(g). *Id*. The same analysis applies here. By refusing Ameer's application under § 221(g) following a consular interview, State complied with the regulations governing visa adjudications. For the Court to require anything more would be to "impose a duty that has no basis in the INA or its implementing regulations." *Id*. at 9. And judicial review of Ameer's refused application would "clash[] with the longstanding assumption that aliens residing abroad are 'barred from challenging consular visa decisions in federal court *unless legislation specifically permitted such actions*.'" *Id*. (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1162 (D.C. Cir. 1999) (emphasis added)). Without "a specific, unequivocal command" from Congress requiring State to complete administrative processing following a visa refusal, State has not "unlawfully withheld" any action that the Court can compel by mandamus or under the APA. *See id*.

**C.**

State also raises consular nonreviewability as a merits bar to Ameer's claims.  "Th[is]
doctrine holds that a consular official's decision to issue or withhold a visa is not subject to
judicial review, at least unless Congress says otherwise."  *Saavedra Bruno*, 197 F.3d at 1159.
Ameer argues that consular nonreviewability does not bar review when State has failed to issue a
final decision on a visa application.  *See* Opp'n at 14–19.

But recall that Ameer concedes her visa application was refused under § 221(g).  The
Court is barred from reviewing this decision under consular nonreviewability.  *See*
*Yaghoubnezhad*, 2024 WL 2077551, at *10–11.  Were the Court to order State to complete
administrative processing, it would, in effect, be ordering State to re-adjudicate its initial
refusal—which necessarily entails a reexamination of that refusal's substance.  *Id*. at 11.  This
kind of review is precisely what consular nonreviewability counsels against.  *Id*.

The Court does not doubt that it can "compel the agency to issue a decision—up or
down—on a long-pending application."  *Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 13 (D.D.C.
2022).  But once an agency has issued a decision, the Court must "steer clear of the substance of
the decision."  *Id*.  In this case, that means refraining from ordering additional processing of a
refused visa application.

**D.**

The Court has already given two independent grounds for dismissal: lack of a
nondiscretionary duty and consular nonreviewability.  Nor can Ameer succeed on the merits.

To evaluate whether an agency's delay is unreasonable, the Court applies the six-factor
test from *Telecommunications Research & Action Center* (*TRAC*) *v. FCC*, 750 F.2d 70, 80 (D.C.
Cir. 1984).  The *TRAC* factors are:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the Court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the Court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (cleaned up).

Ameer argues that a *TRAC* analysis is "inappropriate" at the motion-to-dismiss stage and "useless" in the visa adjudication context.  MTD at 28–32.  This assertion is belied by the Circuit's recent decision in *Da Costa v. Immigration Investor Program Office*, 80 F.4th 330, 340 (D.C. Cir. 2023), affirming a district court's dismissal of a visa adjudication case on *TRAC* factors.  This is not to mention the dozens of similar cases in this district granting Rule 12(b)(6) motions following a *TRAC* analysis.  *See, e.g.*, *Bega v. Jaddou*, 2022 WL 17403123 (D.D.C. Dec. 2, 2022) ("[A]pplication of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay.").  As in those cases, the record here provides sufficient undisputed facts—namely, the short length of the delay—to determine whether Ameer has pled a "plausible claim for unreasonable administrative delay" under *TRAC*.  *See Mokkapati v. Mayorkas*, 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) (collecting cases).  So a *TRAC* analysis is appropriate.

11

Courts typically consider *TRAC* factors one and two together. *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021). These factors "strongly favor" State because "Congress has not supplied a rule of reason" or "statutory deadline" for processing non-immigrant H-1B visa applications. *See Yaghoubnezhad*, 2024 WL 2077551, at *12. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017).

Ameer argues that Congress set a timeframe for adjudication in 8 U.S.C. § 1571(b), which states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." But several courts have held that the "sense of Congress" language reflects that the provision is "precatory" and not binding on the agency. *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021); *see also Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 529 n.26 (D.C. Cir. 2015) (noting the First, Third, and Ninth Circuits, have treated similar language as "precatory"). And, in any case, courts have regularly found far longer delays insufficient to support an unreasonable delay claim. *Yaghoubnezhad*, 2024 WL 2077551, at *11 (collecting cases).

The fourth factor likewise "strongly disfavors" Ameer, because granting her application would enable "line jumping," putting her application "ahead of longer-pending petitions." *Da Costa*, 80 F.4th at 343. Ameer disclaims that any order from the Court would have such effect. Opp'n at 37. But the relief Ameer seeks—expedited adjudication—would "necessarily reshuffle[] the queue of other applicants also waiting for adjudication of their cases." *Dastagir*, 557 F. Supp. 3d at 167. More, since Ameer does not allege any impropriety by State in its processing of her application, Opp'n at 39, the sixth factor does not help her either.

Factors three and five—"the interests prejudiced by delay" and its effects on "human health and welfare"—weigh slightly in favor of Ameer. *TRAC*, 750 F.2d at 80. Ameer alleges that because of the delay in visa processing she faces "the possibility of termination" from her position at Penn State. Compl. ¶ 3. This would put her in a position where she "may not be able to provide for her family." *Id*. Though these disruptions are undoubtedly frustrating for Ameer, many other visa applicants face similar circumstances. *See Palakuru*, 521 F. Supp. 3d at 53.

In short, Plaintiff's hardships cannot "tip the scales" when weighed against the other four factors. *Da Costa*, 80 F.4th at 344. All told, Ameer loses under *TRAC*.

## IV.

For these reasons, State's Motion to Dismiss will be granted. While the desire to work and teach in the United States is a worthy one, visa-related matters are particularly within the grace of the Executive Branch, and this is not one of the exceedingly rare situations where judicial oversight is allowed. A separate Order will issue today.

Dated: June 4, 2024                              _____
                                                  TREVOR N. McFADDEN, U.S.D.J.